We will proceed to hear argument now in number 24-5040, Michael and Deborah King v. DePuy Orthopaedics, Inc., and we will hear first from Mr. Gowdy. Mr. Gowdy, are you there? Give me one moment, please. May it please the Court, Brian Gowdy on behalf of Mr. and Mrs. King, I'd like to reserve five minutes of time for rebuttal. The trial court's curative instruction here can be broken down into two parts. That there was an effort by plaintiffs to withhold Dr. Mullen's compensation from the defendant and the jury, and that compensation was undisclosed. And secondarily, that the compensation itself was excessive. Today, I want to focus mainly on the first part, the effort to withhold an undisclosed aspect of the instruction and why it was not harmless error. For this instruction to have been accurate and appropriate, DePuy needed to establish a clear legal duty for plaintiff's counsel to disclose the payment. Not merely be shocked and morally outraged at the amount of the payment. There wasn't such a duty, and even if there were... Hold on, why wasn't there a duty to disclose a $15,000 payment to this individual? First of all, it was $15,000, and as we lay it out in the brief, Your Honor, under Rule 26A, there's two types of experts. And I would just start with the general premise that absent a duty to disclose, we as advocates aren't required to provide evidence to the other side. And what Rule 26A makes very clear is that the duty to disclose payments is only with respect to retained experts. And you don't think $15,000 is a retained payment that should have been disclosed? So under this Court's case law in Goodman, you do not look at the amount of the payment to determine whether or not someone is a retained expert or not. You look at the text of Rule 37A to B, Your Honor, and what that text says is if the witness is one retained or specially employed to provide expert testimony in the case, then the witness report must contain, and it has a list of six things. What rule are you quoting from? Rule 37A to... I'm sorry, Rule 26A... Rule 26. Yeah, I'm sorry. Rule 26, thank you for the correction. Rule 26A to B, and then there's little i and little roman numeral 6. And I'm not going to read 2 through 5 because it's not relevant. But what it says is if the witness is one retained or specially employed to provide expert testimony in the case. So the question is whether it's not... It is every treating physician in this country who testifies in litigation gets paid. There's a second part to... I think you left out the second part of that clause. If the witness is one retained or specifically employed to provide expert testimony in the case, or one whose duties as the party's employee regularly involve giving expert testimony. I did leave that out because I think that would be involved if we had a corporate client who had... Or, for example, a police department where you had somebody who was regularly employing... That was in-house, basically, an expert witness. So, yes, I left that out because in this case it's not applicable given that my clients are individuals. I don't think Dr. Mullen, just to be clear about the facts, you know, this was tried in 2024. Dr. Mullen was the surgeon who implanted the implant in 2010 in the left leg. And that's the implant at issue from the defendant's device. And then he also saw my client, Mr. King, again in 2011 and 2012. But even if it wasn't required to be disclosed by the expert report disclosure provision, there's two other potential theories of disclosure. One is that they had asked for all communications with Dr. Mullen, and that was not supplemented to include the later communications about his compensation. So that's one. And then second, before Dr. Mullen took the stand, there was a conversation about this issue and some discussion about retained, non-retained. But in the course of that, the flat statement was made, no one is paying him for his testimony, which the district court found to be a false statement. You know, even if you don't have to volunteer something, once you say something on the subject, it has to be accurate. And so having made that statement, didn't it have to be corrected by, well, actually we gave him $15,000. For two hours of testimony. Right. So, by the way, their expert, it was more opaque, but was guaranteed $12,125. We're not talking about their expert, we're talking about whether you had a duty to tell the district court and opposing counsel that he was being paid $15,000, and having said a few, two days earlier, that no one is paying for his testimony, and then knowing that that became false at some point, why wasn't the district court told that he was paid $15,000? I'm going to answer your question. I just, I sense a sense of outrage about the amount of the fee, and I wanted to make it. I didn't say anything about outrage. I'm talking about correcting a statement that was not accurate. Right. I'm going to answer your question. What counsel said was not said in front of the jury. It was said to the judge. So what? Well, because the curative instruction. So, you can lie to the judge? No, but there is a, the question here is whether or not this is the appropriate sanction for counsel's statement to the judge outside the presence of the jury. The judge has lots of sanctions power. I want to separate out the question of whether there was a violation of a duty and what the remedy for that is. And I'm focusing first on whether you violated, the King's violated a duty of disclosure. And tell me why, having said two days earlier, that no one was paying for his testimony, when in fact he was getting $15,000. Tell me why you think you didn't have to tell the judge about the $15,000 payment. Okay. I agree with you that Mr. Haberman, the King's counsel statement to the judge was something he shouldn't have said. So, I'm actually interested in Judge Collins' question as well because, and I think you keep talking about now sort of the misstatement, but I really do want to go back to the obligation to disclose in the first instance. So, can you explain why it is that your view is that your client didn't have an obligation to disclose this information in the first instance? Sure. So, I think I see three possible bases here. One that the judge has identified about counsel's statement. And then the other two are Rule 26A and Rule 26E. And I think it's important to start with Rule 26A because the district judge's assumption here... So, your argument under Rule 26A is that because he was not retained in this case, there was no obligation to disclose the payment. Is that right? That's correct. So, now maybe address your argument under Rule 26E. Okay. So, under Rule 26E, I think that the context here is very important about how this all came about. And it takes a little bit of time to explain and it's more fully explained in the brief. But on November 4, 2022, the defendant served 57 discovery requests. One of those asked for communications, not payments or fees, but communications between plaintiffs and their orthopedic surgeons. Two weeks later, the defendant deposed Dr. Mullen. He said he expected to be paid for his time for a telephone consultation. And I would tell you that he... Well, you never know about these lawyers. That's what he said. Right. He was joking. I think it's pretty obvious from the context. But the important point, Your Honor, is that they were told that this doctor, like I think every other treating physician who's ever testified, expected to be paid and is entitled to be paid reasonable compensation for his time when he has to testify or even take a phone call. That's what it was about. Plaintiff's counsel made a phone call. But the other side should never have to guess what the amount is or whether or not it's happening. And that's what they had to do here because it was never disclosed. That's the problem. Right. So the problem is that they didn't ask. At that deposition... You had a duty to disclose that information. Well, that's where we're at, I guess, Your Honor, is that we went through 26A and we don't have a duty disclosed under 26A. Well, apparently under your argument, no. Well, Your Honor, it's not just my argument. It specifically lays out in the rule, and it's textual, that treating physicians, i.e. non-retained experts, don't have what's in subsection 6, which says a statement of the compensation to be paid for the study and testimony in the case. I don't think I've heard the answer to Judge Desai's question about why it wasn't embraced by the duty to supplement the response about communications under 26E. I was trying to get there, but I've got another question. So on the timeline, Your Honor, it was that on November 18th, they were told by Dr. Mullen in his deposition that he expected to be paid. There was no follow-up question about the amount. Apparently not of that interest to the defense counsel at that time. Then in March of 2023, plaintiff responds to this request number 43 out of 57 dealing with communications and says none.  So it seems like at that, and we go from March 2023 to July of 2024, and nobody from the defense says, wait a minute, that's got to be wrong. So it's essentially your argument that because they never asked, you didn't have a duty to supplement your disclosure? My argument is that it was understood by the parties, the lawyers themselves. Unless they assert some sort of confusion or request for further information, your assumption and every party's assumption can be that they must know, so I no longer have a duty to supplement? Well, Your Honor, they must have known that there was a communication about the payment at the deposition, and so everyone seems to have been acting up until July of 2024. Do you think the duty to supplement had ceased, was cut off at some point? No. I don't think anyone understood the request to cover payment, because if they did, they would have said something between. It just asked for communications between these parties. Right, so I guess I'm trying to put out the context of the entire litigation. The request is served in November of 2022. Two weeks later, Dr. Mullen is deposed. He says, I expect to be paid. Your argument is that the duty was satisfied, not that the duty to supplement somehow concluded or came to a natural end and you didn't have to do it. Your argument is that it was satisfied. Yes, that's correct. Satisfied because the other side never asked for any further information, and so your assumption was that they knew. Yes, and I want to segue. I know you want to stick, Judge Collins, you want me to stick to the duty question, and I see I'm now way into my rebuttal. I'll give you three minutes on the call. We've used a lot of your time. Thank you, I appreciate that. I think the context is important. There's 57 discovery requests. If the defendant wants the information, and I was a commercial litigator before I became an appellate lawyer, it's really easy to ask for the amount of money. You serve it interrogatory. How much money is the orthopedic physician being paid? Direct question, not request for communications. Well, because they want to encompass all the other possible communications, which presumably is, hey, this is how much I'm getting paid. Fair enough, but then why wait from March? They knew on November 18th of 2022 Dr. Mullen was being paid, and then on March of 2023 we tell them none. So clearly we're construing that not to include the amount of the payment. And we tell them none again in September 2023. And they don't say anything, though they're saying, oh, well. So the problem I'm having with your argument is that it's sort of, you're arguing that, you know, we really don't have a duty. We can disclose a little bit, and then somehow the other side is supposed to surmise that there are other information, and if they don't follow up, well, you know, it's their fault. That's kind of the whole purpose behind these rules, and specifically this rule of discovery, that we shouldn't have to expect the parties to engage in this sort of hide-and-go-seek type of situation. We expect that folks are providing the information in exchange so that the resolution of the issues could be clear to the jury when it's before them. But when everyone is working from a lack of information because you're expecting the other side to somehow surmise that this information is provided, it just seems odd to me. I understand your point, Your Honor, but we're still, I guess I'll try to say two things, and then I'll try to reserve the rest of my time for rebuttal. One is we have the rules in place, and we have to follow the text. And there are, the whole assumption here is that because the treating physician was paid money, he becomes a retained expert under the rule. And that can't be right. Number two, and this is the point I wanted to try to get to earlier, even if you accept that we should have supplemented and we violated our duty to supplement, I don't see how that equates to an effort to withhold. And that's the language in the instruction. All right. Thank you, Counsel. I'll give you three minutes for rebuttal, but we'll hear now from Ms. Davidson. Thank you. Thank you, Your Honor. May it please the Court, Jessica Davidson, on behalf of the defendant, Annapolis Depew. I think where I want to start is something that was not addressed at all in the last few minutes, and that's 18 U.S.C. 201. And I think it's a really important place to start because under 18 U.S.C. 201, you're not supposed to pay a fact witness $15,000 for two hours of testimony unless that is someone who regularly charges $7,500 an hour in their ordinary course of business. The whole purpose of 18 U.S.C. 201 is that you can only pay a fact witness the reasonable value of that person's time. And I think that's critical when we talk about Rule 26A because the reason Rule 26A doesn't require you to disclose how much you're paying a fact witness is because it is assumed that people follow the rules. And under the rules, Dr. Mullen should have been paid a couple hundred bucks an hour, the reasonable value of his time, for his testimony. And so it's very... That doesn't make 26A applicable if he's not a retained expert. I mean, it still may mean that it was a violation of 201, but it doesn't fall within 26A simply because the compensation was successive. So the whole reason Rule 26A doesn't cover non-retained experts... We can't go into the reason and spirit and purpose. We have to apply the rules as written. It says retained expert. He's not a retained expert. Therefore, it doesn't apply. So it seems to me the theories are supplementation under 26E or correcting the false statement to the judge. But I don't see how the 26A is the source of the duty to disclose here. I think the importance of 26... The importance of 18 U.S.C. 201 is that we heard a lot about counsel didn't ask, counsel didn't follow up. The assumption is that people are following the rules, and yes, treating physicians are paid all the time, but they're not paid this outrageous fee, so there would have been no reason for defense counsel to keep asking how much are you paying and how much are you paying. I mean, what you're understanding under our case law is when the duty to supplement terminates. Does it terminate at the discovery cutoff? Does it terminate at the start of the trial? When does it continue? What have we said about this issue? I think Ninth Circuit law is clear that the duties to supplement does extend past discovery. I would point the court to SPS Technologies 2021, U.S. District, Lexis 24945, and I really think... Have we said anything on it? A lot of these don't come up to us, but I'm just wondering, have we said anything on when the duty to supplement cuts off? There is no Ninth Circuit binding authority that I could find on when the duty to supplement cuts off. I do think it's recognized that it does extend past the close of discovery, and I think what's really important is that the duty to supplement has to extend when the discovery responses would otherwise be misleading. So here we have the situation where the response said none, and that no longer became accurate. So I don't think that the duty to supplement would apply to every random piece of paper created between the close of discovery and trial, but where there are things created between the close of discovery and trial that result in discovery responses being erroneous or misleading, that's where the duty to supplement really does have to increase up until trial. Counsel, isn't the relevance of your argument with respect to 18 U.S.C. 201 is that by circumventing 26A, by calling somebody a fact witness but paying them like a retained expert, really then means that you have a retained expert. So you do get back to 26A, because just by saying this person isn't a retained expert isn't the only factor we use to define who's a retained expert. So if you're paying somebody a fee, $15,000, which is not the normal travel expense associated with somebody coming to testify as a fact witness, then we can say that's... You can't just call it that. You can just label it a fact witness if you're actually treating them as a retained expert, and then we can get back to 26A as a possible hook for the disclosure obligation? I think, Your Honor, that's a very good point. Thank you, Justice Sy. The case that appellants cite doesn't actually say that you can pay someone and avoid calling them a retained expert. That's actually the flip side. In that case, the person wasn't paid, and the Ninth Circuit said you can still be a retained expert even if you're not paid. So I think that your point is well taken, that it's too easy to say, well, we avoid Rule 26A because he's not a retained expert, therefore we don't have to disclose that we're paying him an astronomical sum of money, to quote Dr. Mullen, and therefore we evade any disclosure requirement. But going back to the point that Judge Collins made, there are multiple bases here for this sanction, right? The first basis is the failure to supplement. The second basis is the misstatement to the court. Nobody's paying him for his testimony, which was made 72 hours after wiring money to Dr. Mullen. What do you understand to have been the violations that the district court found? Did the district court find which of the three theories, or collection of the three theories we've discussed, 26A, 26E, correction of false statement, do you understand the district court that you have relied on in making its ruling? So the district court did order supplementation after Dr. Mullen came off the stand in order that we be provided the materials, the communications we didn't receive. So you view it as 26E? So I believe in that respect, the district court did find a violation in 26E. I think the district court also found bad faith under her inherent authority. Under this court's ruling in Fink v. Gomez, a district court needs to find either bad faith or conduct tantamount to bad faith. And the district court was very clear that counsel's comments were disingenuous, that counsel was, to quote the district judge, your attempt to tell me you didn't say what you said only makes this worse. So I think it's pretty clear that there was both. Is there any indication in the record that Dr. Mullen was part of an effort to keep this from the court, his compensation from the court, or from the other side? I don't think so. I don't think Dr. Mullen understood, you know, Rule 26, Rule 37. Some lawyers barely understand it. Now, turning to the issue of remedy, that's one of the concerns that I have because what the jury was instructed was that there was an effort in the passive voice, there was an effort to withhold Dr. Mullen's compensation from the defendant and the jury, and the excessive and undisclosed payments to Dr. Mullen may have affected the credibility of his testimony. It seems very clear in that instruction that the jury was invited to infer that Dr. Mullen himself had been part of an effort to conceal this from the court and the jury and that therefore they should think he was a liar. It seems to me that there's a mismatch at that point between the remedy and the violation because they were invited to draw an adverse entrance as to his credibility because of counsel's failure to disclose. Can you address that? Certainly, Your Honor. I have a few things I'd like to say in response. First of all, I don't read this jury instruction as saying there was an effort on the part of Dr. Mullen to withhold compensation. I think the assumption would be there was an effort on the part of the plaintiff. It was an effort on part of this side of the case. It simply doesn't say that. It is entirely in the passive voice. There was an effort to withhold his compensation. It does not say by whom. So one reason I don't think... And the jury doesn't know all this back and forth. The false statement made two days. They don't know any of that. They just get this out of the blue. Well, the jury did hear Dr. Mullen asked, were you compensated? And Dr. Mullen responded that he was. And told the truth right off the box. Correct. So to me, that would imply that he was not the person who was trying to withhold this. I don't think that the court's instruction in any way implies that it was Dr. Mullen who was making that. But then why is the jury invited to find that he's a liar based on the fact that it was undisclosed? So the jury's invited to find that this excessive payment may have affected his ability. No, I totally agree with you on the excessive payment. But it says excessive and undisclosed. Why was the jury invited to find that Dr. Mullen was a liar based on the fact that it had not been disclosed and not told by whom? So, Your Honor, I believe that because Plaintiff's Counsel told the court we are not paying him, there was an effort on the side of the plaintiff to withhold this information from the defendant precisely because they didn't want to have this bias crossed, precisely because there was the violation of 18 U.S.C. So the undisclosed nature of it is relevant to the prejudice. Absolutely. But the particular remedy is that the jury was invited to infer that Dr. Mullen was part of the effort to disclose it and to withhold it and therefore was a liar. And that was false. So I don't think that's what the... Respectfully, I don't think that's what the instruction said. Where in the instruction is the jury told not to draw that inference? It seems to me they are invited to do that. The jury's invited that it may draw the inference that the excessive and undisclosed payment affected his credibility. That is a punishment that fits the crime, right? The whole idea of a curative instruction is that it should be compensatory. And the reason DePue was prejudiced was because it was undisclosed. Had it been disclosed, DePue would have been able to present the jury with the two different fee schedules that were emailed to plaintiffs 72 hours before Dr. Mullen's testimony to show that this line item had been added precisely for this trial, right? To show that the line item for trial was completely out of the bounds of what Dr. Mullen charged for seeing patients, and therefore the undisclosed nature of it was relevant to the curative instruction because that's part of the prejudice. So how would the jury use the undisclosed nature of it to decide whether he was a liar? And what would be the thought process that would permissibly... by which they'd permissibly use the undisclosed nature of it? So the way I read this, and not to sort of grammatically challenge your reading, it says that the excessive and undisclosed payment may have affected the credibility. It doesn't say the fact that the payment was undisclosed may have affected the credibility. So it's an adjective as opposed to a noun, and I think that's important because if we're saying the fact that it was undisclosed may have affected his credibility, that's one thing. But instead, it's just describing the payment, and it's saying the payment may have affected the credibility, and as an adjective, that that payment happened to be excessive and undisclosed. If I may, Your Honor, I do want to emphasize in my last few minutes that this sanction was proper under Rule 37. The sanction was proper under the court's inherent authority, but I also want to just take a minute to talk about Harnell-Serra because I think it's important. Under this court's ruling in the Venezia case, the harmless error doctrine applies where it's more likely than not that an asserted error had no effect on the verdict, and I think it's important to understand this small instance at trial. But didn't, in closing argument, Dupuy's counsel characterize this particular curative instruction as one of the most important ones? I find it difficult now to understand an argument that it's harmless if, in fact, it was relied upon by Dupuy at trial as a very significant instruction. So, Your Honor, the discussion of the Dr. Mullen payment situation, all told, including just the facts of what happened, not just the instruction, was about 7% of counsel's closing. And I think what's really important to understand is this was a case with someone who graded his hip an A-, saw an attorney ad, then went and shopped for doctors to try to get a new hip. And so the person whose credibility was most important in this trial was Mr. King. And by the end of the trial, Mr. King's credibility was so completely shattered because it emerged that, as a commercial pilot, he had repeatedly, repeatedly lied to the FAA about his health. And here, a jury was asked to rely on his self-report about his health. And Mr. King had lied about having diabetes to the FAA. He had lied about being on hypoglycemic medication to the FAA. And so at the end of this trial, we had a jury that was asked to find a verdict in favor of someone whose own credibility had been shattered. And therefore, that's why I say that this situation involving Dr. Mullen was one episode in the trial, but not sort of the overwhelming aspect of the trial. Also, you know, most of what Dupuy's counsel said in closing could have been said without this instruction, right? It could have been said based on this was supposed to be a fact witness, he was paid what he described as an astronomical amount of money, and you should consider that in weighing his credibility. That could have all been done with or without the instruction. And as a result, I feel that the instruction itself was not, like, as significant to the closing as suggested in the appellant's briefing. All right. Thank you very much. All right. We'll hear from Paul now. Thank you. I represent the Kings. I do not represent Mr. Haberman. He was sanctioned, and there's a separate appeal in this case, in this court going on about that. He was sanctioned after all of this. But I think, Judge Collins, your questions were spot on about whether this was the appropriate sanction. And I will concede that all of this looks very bad. And if you want to find that Mr. Haberman should have supplemented under Rule 26E, so be it. This instruction still was not appropriate. Well, what's your response to counsel's point that it doesn't say that the fact that it was undisclosed could be used against him? It says that the undisclosed payment, the noun is payment, could be used to assess his credibility. I think there's two parts. There was an effort to withhold Dr. Mullen's compensation. And so I think that's what's just false, Your Honor, because it suggests, first of all, that perhaps Dr. Mullen was involved in it. That statement is amply supported in the record. At least as stated literally in the passive voice, there was an effort to withhold his compensation. The judge, you know, you may not like the finding, but the judge found that the statement made earlier was false and misleading. And counsel dug himself deeper the more he tried to justify it. Right, I get it. But again, we're talking about Dr. Mullen's credibility. As you pointed out, there is no evidence in the record that Dr. Mullen was involved in this. And now she's trying to tell you this is how it was read, but Your Honor just read it a few moments ago, and it's all about Dr. Mullen's credibility. And it doesn't say there was an effort by plaintiff's counsel or plaintiff to withhold Dr. Mullen's compensation. It's only talking about his credibility, and it's suggesting an undisclosed payment by him in some way. And so this instruction is the wrong remedy. And I guess I just want to point out, what is it they didn't get out in front of the jury? Well, you could see that it would have clearly been authorized by Rule 37 to just strike his testimony in its entirety. Your Honor, I. Clearly authorized by the plain language. I mean. Right. I guess I don't agree because, again, we're here on the King's case. We're not here to punish Mr. Haberman. There's plenty of ways. Rule 37 allows the court to punish the party for its counsel's misdeeds. And if counsel, in the district court's judgment, lied to the district court about the witness, Rule 37 seems clearly to authorize the district court to strike the testimony in its entirety. Now, she thought that that would be an excessive sanction and pick something lesser. Right. Can I? My light's flashing. Yes, you may answer that question. I think that would have been an abuse of discretion had the judge done that. And that's why I was trying to lay out the circumstances here with the timing. About no one seemed to think that the. Because the rule. The only possible violation is Rule 26E. And no one from. Even though they knew Dr. Mullen was being paid since November 18th, 2022. No one for 16 months from Dupuy said, hey, you're communicate your answer twice. Is wrong because we know he was paid in. There must have been communications for that. All right. Thank you. I'd let you thank you over. All right. The case just argued will be submitted.
judges: COLLINS, MENDOZA, DESAI